Patterson, J.
It has been held in this district, in several Special Term cases (Riessner v. Cohn, reported p. 312 of this-volume, Third National Bank v. Clark, p. 312, n. of this volume, and Spelman v. Soussman, reported p. 315 of this volume), that voluntary conveyances, made contemporaneously with the making of a general assignment, are to be regarded as part of the assignment, and if the preferences thus given are void, in whole or in part, the assignee may maintain an action to prevent the enforcement of such conveyances or 1 iens, and if he neglects to do so, a creditor, as a cestui que trust under the assignment, may bring suit to preserve the property in aid of the assignment. This action is brought on the theory mentioned, and the allegations of the complaint are apt for the purpose.* The confession of the- *322 seventeen judgments and the delivery of the three chattel mortgages were all done on the morning of the day of the assignment, and on the facts proven may well be regarded *323 as forming part of one transaction with the execution of that assignment. The assignee has substantially refused to bring the suit. The demand was made, and his procrasti *324 nation upon the pretexts, stated in his letter, may well be considered an effort to postpone committing himself to any course of action until the day of sale under the levies should *325 have passed. His position as cashier of the bank and as assignee cast upon him a decided duty, and called for a , prompt, immediate and direct response to Mr. Stiles’s demand. But for bringing this suit the very consequences, sought to be averted would probably have taken place, and the plaintiff’s rights would have been lost.
The serious question involved is as to the plaintiff’s having a claim to be protected as eestuis que trustent. By proceeding with their replevin suit they disaffirmed the contracts of sale, and cannot claim to be creditors entitled to bring this action on the basis of that indebtedness (Morris v. Rexford, 18 N. Y. 552; Kinney v. Keenan, 49 Id. 164; *326 Moller v. Tuska, 87 Id. 166). A claim for unliquidated damages, or in tort, is not a debt to be paid by an assignee of an insolvent (Kellogg v. Schuyler, 2 Denio, 73; Crouch v. Gridley, 6 Hill, 250; see also In re Adams, 15 Abb. N. C. 61), and the deed here refers to the payment of debts and liabilities, meaning only such as are due and payable at the date of the instrument, or are expressly provided for therein. Powers v. Benedict (88 N. Y. 605, 610) decides nothing to the contrary, and is not an authority for the broad proposition claimed by the plaintiffs. It merely holds that by bringing one replevin suit a party is not precluded from following property or its proceeds not taken on the process in the first suit'into the hands of other persons, and that an action for damages or in trover will lie for the value of the untaken property. The reference made to proof of claim in that case as not affecting the right of the plaintiff to maintain that particular action, must be understood as relating only to the terms of the National Bankrupt act, which by an express provision (U. S. R. S. § 5067), permits proofs of claims for damages for conversion, etc. But there appears to be an indebtedness of the assignors to the plaintiffs here, named in the schedules, to the assignment and specifically stated at the sum of $2,017, and its consideration is referred to as a particular kind of merchandise. I do not understand the addendum after the name Sweetser, Pembroke & Co., in the column of creditors to apply to anything more than the $5,000 referred to in connection with the replevin suit, and hence this action may be maintained as to the indebtedness admitted in the schedule to be a contract 'debt.
This is not a case in which the full security on staying a judgment, pursuant to section 613 Code Civil Procedure, is required. That section does not apply to a case of this character (Packer v. Nevin, 67 N. Y. 550).
The motion to continue the temporary injunction until final hearing is granted
The motion for change of venue must also be granted. *327 The judgments affect real estate in Saratoga county, and the action is local. It is too late now for the plaintiffs to-reform their action and change its character, even if they could do so. They must do what would be required of the assignee, viz.: seek full and not partial protection for the assigned estate, and it is doubtful if they can be permitted now to abandon any part of the necessary relief. At all events the character of the action cannot be changed by a disclaimer or stipulation or concession of one side only scr as to make it triable in any other county than that in which the real estate is situated (Acker v. Leland, 96 N. Y. 383; Wyatt v. Brooks, 42 Hun, 502).
Note on the Duty oe Assignee eor Creditor’s, Executors and Administrators and Eeceivers, and the Eemedy oe Creditors against Fraudulent .Special. Assignments, and Fraudulent Preferences.
The N. Y. general assignment act was amended in 1887 so as to declare all preferences (except those for wages and salaries required by the amendment of 1884) valid only to the extent of one-third the assets.
The question then arose what is the effect of this restriction on preferences effected by separate instruments or confessions of judgment immediately before the making of a general assignment.
The following principles seem clear, although the authorities are not wholly agreed in reaching these results.
1. A creditor may lawfully accept Such a preference if he does so without intent to hinder, delay or defraud other creditors. (See case 17, below).
2. If such preference be secured by an instrument or security merely enabling particular creditors to take particular property, and there is no general assignment within the meaning of the assignment law, the entire preference is valid, and other creditors have no ground of complaint in respect to it. (See cases 15-17, below.)
*328 3. If the preference is secured by instruments which the debtor designed to strip him of all his property, and they have that effect so that there is nothing left for a general assignment to operate on, the preferential instruments are subject to the same rule of illegality as if they were provisions in a general assignment; and a judgment creditor may impeach them. (See cases 19, 26, 27 below.)
4. If after giving preferences to particular creditors by part of his property, the debtor, in the same emergency, makes .a general assignment of the residue of his property, the perfer-ential instruments and the assignment are to be taken together for the purpose of determining to what amount the preferences are valid, just as if the preferences were expressed in, and all the property conveyed by the assignment; and the preferences, if made in good faith and without intent to defraud creditors, do not impair the validity of the assignment. (Same cases.)
5. If the preferential instruments were made to the same person who is named as assignee in the general assignment, the question of administration of the assets according to the preferences, but only up to the legal limit, will be free from difficulty. If made to another person, the assignee under the assignment has a right to the assets transferred by the preferential instruments in order to subject them to the law, unless they are so small an amount that it is clear they cannot -in any event, exceed the limit.
6. If the preferences are fictitious, (see cases 8 to 12 below) or if, although for. real debts, they are made and accepted with actual intent to hinder, delay and defraud creditors, (cases
8-21 below) the preferential instruments are wholly void, and the assignee is entitled to the assets sought to be thus diverted, leaving the fraudulent creditors to prove their claims if they .can. (See cases 42 and 43 below.)
7. Judgment creditors cannot maintain an action to set aside the preferential instruments, unless the assignee refuses to do so or stands in an adverse or implicated position. (See cases 39-47, below.)
8. If the preferential instruments and the general assignment appear to be parts of one connected fraudulent scheme *329 on the part of the assignor and the preferred creditors to hinder, delay and defraud other creditors, then, even though the preferred creditors are intended to be secured only for actual debts justly due them, it is question of fact for the jury whether the entire connected transactions of preferential instruments and general assignment are not fraudulent and void as against other creditors. (Cases 24 and 27, below.)
9. An action for that purpose may be maintained by any judgment creditor, (and according to the case of Tannenbaum v. Rosswog, p. 347 of the text, an attaching creditor may have an injunction and time to get judgment); and in such .action the fraud in the assignment may be shown, both for the primary purpose of setting the assignment aside, and the secondary purpose of thus answering the objection that the existence of the assignment gave to the assignee the exclusive right to impeach the preferential instruments. (See case 47, below.)
10. In such an action, the connection of the successive instruments in point of time is not sufficient evidence of their actual fraudulent character. The presumption is that the connection makes the preferential instruments subject to the assignment; and to impeach the assignment itself it must be .shown that there was a fraudulent intent as matter of fact. (See case 26, below.)
11. The statute L. 1858, c. 314, p. 506, enabling assignees, executors and other trustees to impeach fraudulent acts of the assignor, decedent, etc., while it applies to fraudulent transactions, whether actually or constructively so, does not apply to acts in no sense fraudulent, although void by statute, such as a chattel mortgage or conditional sale, unñled. (See cases 39-41, below.)
12. If an assignee for benefit of creditors will not on request bring an action if necessary to impeach such transaction, a creditor may do so alleging the reason (See case of C. Reissner & Co. v. Cohn, p. 312 of text); or the creditor may, in a proper case, have the assignee removed for cause (See case 45 below); and on accounting may hold him liable for loss actually resulting by intervening impracticability of recovery. (Case 47, below.)
*330 It is only a valid-general assignment, however, that can prevent the creditor from suing on his own behalf. If the general assignment is void, as well as the precedent transactions, the assignment is no obstacle to the creditor’s action (case 47 below), and if the assignment and precedent transfers are connected in one fraud, they may be impeached together.
13. In the case of executors refusing to bring such an action on request, or being so implicated in the transactions as not to be proper plaintiffs, it is now held that the creditor must apply for an order directing them to sue, or for removal. (Case 49, below.)
14. As to receivers and the extent to which they are subject to the orders of the Court, see 19 Abb. N. C. 359, n.
15. The costs of the litigation by the representative are not necessarily chargeable on the estate or fund, if the litigation be unsuccessful, and was commenced without leave of court. The representative may take the opinion of the beneficiaries before proceeding with the litigation, and ask them to indemnify him. (Case 50, below.)

Notes of Gases.

The following abstracts of the most recent cases will afford convenient clue to the earlier ones.
1. Preferences by special partnership avoids their assignment.]' Where a special partnership makes a general assignment which contains preferences, and is therefore void under 1 R. S. 766, §§ 20, 21, a subsequent assignment without preference executed by them is valid. Ct. of App. 1886, Schwartz v. Soutter, 103 N. Y. 683.
2. In assignments by individuals and general partnerships, preferences are not illegal; even when applying individual assets to partnership debts.) It is lawful for an insolvent member of a firm to devote his individual property to the payment of firm debts, to the exclusion of his individual creditors. [Citing Dimon v. Hazard, 32 N. Y. 65 ; Saunders v. Reilly, 105 Id. 12; Royer Wheel Co. v. Fielding, 101 Id. 504; Kirby v. Schoonmaker, 3 Barb. Ch. 46.] And it follows from the same principle that he may also apply it to the payment of any debt owing by him to his partners in the firm, and no inference of fraud can be legally derived from such disposition of his individual property. [Citing Eyre v. Beebe, 28 How. 333 ; Friend v. Michaelis, 15 Abb. N. C. 354.] Ct. of App. 1887, Crook v. Rindskopf, 105 N. Y. 476.
*331 Held, therefore, that an assignment by a firm was not invalidated’ by a provision that after the payment of the co-partnership debts, any residue should be applied to the payment of the individual indebtedness of the partners, pro rata share and share alike. Ib.
3. Assignment made by remaining partner who had purchased the interest of the other partner,—Held, not invalidated by preference of individual debts of the assignor. Ct. of App. 1887, Stanton v. Westover, 101 N. Y. 265.
4. — otherwise of applying partnership assets to individual debts.] An assignment by a firm is invalidated by a preference of an individual debt of a partner out of the proceeds of the partnership property, Sup’m. Ct. 1887, First Natl. Bk. of Portchester v. Halsted, 20 Abb. N. C. 155.
5. Where an assignment for benefit of firm creditors was shown to-be fraudulent by evidence that the assignor, conscious of his firm’s insolvency, transferred firm assets to an indivdual creditor for his-individual debt just before assigning, and selected that creditor as assignee of the firm assets,—Held, that a subsequent attempt at restoration of the proceeds of the property thus divested did not avail to sustain the assignment. [Citing Shultz v. Hoagland, 85 N. Y. 464, 473[. Sup’m. Ct. Sp. T., 1887, Friedburgher v. Jaberg, 20 Abb. N. C. 279.
6. — Preferences not explicitly defined.] Where a clause in a general assignment prefers a particular creditor to the amount of his claim, without specifying it, the fact that the assignee in subsequently preparing the schedules includes in the sum stated to be the claim of such creditor, items which are not a legal claim against the assignors, will not vitiate the assignment, where there is in fact a debt due to such creditor which constitutes a part only of the amount specified-in the-schedule. | Citing Talcott v. Hess, 31 Hun, 282, 284; Shultz v. Hoagland, 85 N. Y. 464-69 ; Terry v. Butler, 43 Barb. 395.] Sup’m. Ct. 1887, Denton v. Merrill, 43 Hun, 224.
7. An assignment for benefit of creditors is not necessarily illegal because creditors intended to be preferred are described as a class—as here, by mentioning “ divers bills'for goods sold to him ” in a specified-business. Sup’m. Ct. 1888, Maack v. Maack, 49 Hun, 507.
8. Fictitious preferences will avoid the assignment containing them. [ Preferences of notes, which in fact represented debts due to the partners, although held by members of their families as gifts,—Held, to avoid thj assignment. [Distinguishing Cole v. Reynolds, 18 N. Y. 74.] Sup’m. Ct. 1887, First Natl. Bk. of Champlain v. Wood, 45 Hun, 411.
9. Assignment set aside for preference held by court to be fraudu *332 lent, in peculiar case [distinguishing Kavanagh v. Beckwith, 44 Barb. 192], in Talcott v. Hess 4 N. Y. State Rep. 62.
10. So will a fictitious debt.] An assignment for benefit of creditors is invalidated by a direction for payment, out of the proceeds of the assigned property, of a debt of one of the assignors, which has been in fact paid by the execution and delivery of a deed to the creditor, which was accepted by him as payment, and not as security merely. i[Citing Wilson v. Robertson, 21 N. Y. 587; Schiele v. Healy, 61 How. Pr. 73 ; National Bk. etc. v. Cohn, 42 Hun, 381; Nichols v. McEwen, 17 N. Y. 22 ; Coleman v. Burr, 93 N. Y. 17, 31.] Sup'm. Ct. 1887, First Natl. Bk. of Portchester v. Halsted, 20 Abb. N. C. 155.
11. The charge that an assignment for creditors was vitiated by a -fraudulent preference given to the wife of the assignor,—Seld, pn a review cf the evidence to be sustained. [Citing Talcott v. Hess, 31 Hun, 282.] Sup'm. Ct. 1888, First Nat. Bank of Westport v. Raymond, 14 N. Y. State Rep. 868.
12. In an action to set aside as fraudulent an assignment for creditors on the ground of preference given to a fictitious claim in favor of the assignor’s son, a finding that the assignment was valid,—sustained, where the question was mainly one of the credibility of the testimony of the assignor and Ms son, whose evidence,if taken as true, supported -the claim as valid. [Citing Warner v. Jaffray, 96 N. Y. 248 ; Nicoll v. Spowers, 105 N. Y. 1; Crook v. Rindskopf, Id. 476.] Sup'm. Ct. 1888, Phillips v. Tucker, 14 N. Y. State Rep. 120.
13. So will a reserved power to give future preference.] A chattel •mortgage executed by an insolvent debtor to one of his creditors under an agreement and for the purpose of paying what he owed to such creditor and also in trust for the payment of such other of his creditors .as he should thereafter designate, not exceeding a specified amount, —Seld, in effect to reserve to the mortgagor the power to create preferences after disposing of the property, and therefore to be void as to creditors. [Citing Hyslop v. Clarke, 14 Johns. 458 ; Wakeman v. Grover, 4 Paige, 23, 41; s. c. in error 11 Wend. 187; Sheldon v. Dodge, 4 Den. 217; Barnum v. Hempstead, 7 Paige, 568.] Sup'm. Ct. 1886, Brown v. Guthrie, 39 Hun, 29.
14. A provision in such chattel mortgage securing to the mortgagor the surplus that should remain after paying the mortgagee and the creditors to be designated by the mortgagor, without making any provision for other creditors,-—Seld, to render it void, as making it in effect a general assignment by an insolvent debtor, in tr'ust for the benefit of preferred creditors. [Citing Barney v. Griffin, 2 N. Y. 365, 371 ; Leitch v. Hollister, 4 N. Y. 211; Dunham v. Whitehead, 21 Id. 131.] Ib.
*333 15. A preference by part of the property, not followed by an assignment, isvalidJ] The provisions of the assignment act [L. 1877, c. 466], have reference only to general assignments made by insolvent debtors-for the benefit of all their creditors, and compliance with its provisions-is not necessary to the validity of a mortgage by the debtor to one-creditor in trust for herself and other specified creditors, of a portion of a debtor’s property, [Following Knapp v. McGowan, 96 N. Y. 75; Tiemeyer v. Turnquist, 85 N. Y. 516.] N. Y. Com. Pl. 1885, Royer Wheel Co. v. Frost, 13 Daly. 283.
16. A transfer by an insolvent firm of all its assets to a creditor, in consideration of his cancelling his indebtedness and paying certain other specified debts of the assignor,—Held, in a peculiar case where the evidence tended to show a purpose of making an absolute sale, and! that the specified debts were to be extinguished as a consideration of the purchase, and not out of the proceeds of the property sold, but absolutely and without reference to the sources from which the money to make the payments should be derived,—to be treated as such sale,, and not as a general assignment which vfould be void for non-compliance with the requirements of the general assignment act. [Distinguishing Britton v. Lorenz, 3 Daly, 23; aff’d, 45 N. Y. 51; Wallace v. Wainwright, 87 Penn. 263.] Sup'm. Ct. 1887, Hine v. Bowe, 46 Hun, 196.
17. In the absence of fraud a creditor has no right to complain of the disposition which an insolvent debtor makes of his property. Such a debtor has a legal right to transfer all of his property to one or more-creditors, provided he does so in good faith for its fair value, and with an honest intent to pay his debts. Such a right is incident to the-ownership of property, and follows the legal title wherever that goes,, unless some special equity in favor of some individual or class is violated thereby. [Citing Daby Ericsson, 45 N. Y. 786.] If there are-persons who have such special rights, they alone have a standing to-enforce them, and they cannot be availed of by third persons for their' own benefits. Ct. of App. 1888, Williams v. Whedon, 109 N. Y. 333.
18. Defendant agreed with a debtor, who owed him $980.79, to-take a chattel mortgage on property worth about $2,500 to secure the-debt and $600 advanced, and to assume other debts amounting to $619.21, and to pay any surplus that might remain to the debtor. Defendant could sell the property on credit, but was to account for' such sale as cash, and to have $200 for his services. Property worth about $600 was left in the debtor’s hands. Held, a mortgage and not a general assignment, for the benefit of creditors; and,having beem found as matter of fact to have been made in good-faith, it was valid.. *334 N. Y. Ct. of App. Oct. 1888, Brown v. Guthrie, 18 Northeastern Rep. 254; rev’g, 39 Hun, 29.
19. — otherwise of a preference by all of the property.] Transfers by an insolvent administrator, to those to whom he would be indebted -upon an accounting, of all his property, in order to secure them in preference to other creditors, and reserving to himself nothing, which .could pass by an assignment for benefit of creditors, are to be deemed subject to the provisions of the assignment law; and the preference sought to, be given is void in the same manner as if it were embodied in a formal general assignment for benefit of creditors. Por a failing .debtor cannot be allowed to employ indirect means to accomplish that which the law prohibits to be done directly. The name of the instrument cannot affect the result. So held, under the Illinois statute. 'The court says: when an insolvent debtor recognizes the fact that he can no longer go on in business, and determines to yield the dominion .of his entire estate, and in execution of that purpose, or with an intent to evade the statute, transfers all, or substantially all, his property to a part- of his" creditors, in order to provide for them in preference to other creditors, the instrument or instruments by which such transfers Are made, and that result is reached, whatever their form, will be held to operate as an assignment, the benefits of which may be claimed by .any creditor not so preferred, who will take appropriate steps in a court of equity to enforce the equality contemplated by the statute. White v. Cotzhausen, U. S. S. Ct. Jan. 28, 1889. But compare Bishop v. Stebbins, 41 Hun, 12.
20. Preferences actually intended to hinder creditors wholly void.] 'The fact of the payment of a valuable consideration upon a transfer of property is not, as a proposition of law, inconsistent with the existence ,of an intent to defraud, and in the application of this principle, no distinction can be made between the consideration furnished by an existing debt, or one arising in any other manner. Ct. of App. 1886, Billings v. Russell, 101 N. Y. 226.
21. Proof, therefore, that a mortgage executed by an insolvent debtor was given to secure a debt actually owing by the mortgagor does not, as a matter of law, disprove the existence of a fraudulent intent .on the part of the debtor, Ib.
Note.—The court cited Pettit v. Shepherd, 8 Paige, 493, 501; Waterbury v. Sturtevant, 18 Wend. 353; Blennerhassett v. Sherman, 105 U. S. 100, 117; Kissam v. Edmonston, 1 Iredell’s Eq. 180 ; Starin v. Kelly, 88 N. Y. 418, 421; Syracuse Chilled Plow Co. v. Wing, 85 N. Y. 421, 426; Kimball v. Thompson, 4 Cush. 441; Gragg v. Martin, 12 Allen, 498; Bradley v. Ragsdale, 64 Ala. 558, 559; Schmidt v. Opie, 33 N. J. Eq. 141; Garland v. Rives; 4 Randolph, 282 ; Lowry v. Pinson, 2 Bailey's *335 Law, 324; Shelley v. Coothe, 73 Mo. 74, and distinguished, Auburn Ex-Bank v. Fitch, 48 Barb. 344; Archer v. O’Brien, 7 Hun, 146, 150; Jewett v. Noteware, 30 Hun, 192; Bedell v. Chase, 34 N. Y. 386.
22. In a creditor’s suit, where the mortgagee of the property under a mortgage claimed to be fraudulent is examined in his own behalf as a witness, it is proper to ask him whether he had any intention to delay, hinder or defraud creditors in taking such mortgage, as the inquiry is competent for the purpose of repelling the charge of fraud and showing that the witness acted in good faith. [Citing Forbes v. Waller, 25 N. Y. 430; Seymour v. Wilson, 14 Id. 567; Griffin v. Marquardt, 21 Id. 121.] Sup'm. Ct. 1887, Sperry v. Baldwin, 46 Hun, 120.
23. Judgment avoiding mortgage as fraudulent against creditors, sustained, in a case where it appeared that the mortgage was only executed when it became necessary to do so in order to defeat the claims of other creditors. [Citing Billings v. Russell, 101 N. Y. 226.] Brooklyn City Ct. 1886, Hyatt v. Dusenbury, 12 Civ. Pro. R. [Browne], 152.
24. — so may an otherwise valid conditional sale.] Although the conditional sales act (L. 1884, e. 315) does not declare unrecorded sales void as to creditors, but only mentions purchasers and mortgagees, yet .an arrangement by which a debtor is enabled to do business under the form of making all his purchases of material conditional, and selling the product of his manufacture as the agent of those who supply the material, thus enabling the latter to secure all the benefit of the debt- or’s services until their claim is paid, and to the exclusion of other creditors, is obnoxious to the same objections in principle as a fraudulent conveyance or an unfiled chattel mortgage, and such a case should be submitted to the jury to determine whether the object was to hinder and defraud creditors. ' Fraud vitiates all contracts as against parties whose legal rights are affected thereby, and will be avoided and annulled at the instance of the defrauded party. [Citing Coggill v. H. & N. H. R. Co., 3 Gray, 545, 549; Ludden v. Hazen, 31 Barb. 650.] Sup'm. Ct. 1888, Frank v. Batten, 49 Hun, 91.
For a note on the construction and effect of the act, see 21 Abb. N. C. 189.
25. A firm of merchants made a general assignment for the benefit •of creditors to persons who had made advances to them under the following circumstances. The advances were made in the form of an ostensible sale of goods to the persons making them for a price less than the market value, under an agreement by the present assignors to repurchase after a certain time for a price equal to or greater than the market value, to keep the goods in their possession, pay storage, insurance and all expenses of handling, and in the event of a sale by them *336 to credit the persons making the advances with the proceeds upon the price at which the assignors had agreed to repurchase. The language of the preference was that the assignee “ shall pay and discharge in full the indebtedness now duo and to .grow, due of the said” [naming the preferred creditors] provided that their demands “for damages arising upon executory contracts of sale, shall not be preferred hereby to exceed the sum $6,000 each of said parties,”—Held, that these preferences were a fraud upon the general creditors, and that the assignment was therefore void. Sup'm. Ct. 1887, Chandler v. Powers,. 9 N. Y. State Rep. 169.
26. Instances of successive transfers.] The fact that on the day of the conveyance, and after delivery of the deed which is attacked, the grantor executed a chattel mortgage to his wife, conveying all property which he has remaining, does not afford conclusive evidence of a fraudulent intent in making the first conveyance; and the circumstances under which it was executed, the existence of a valuable consideration therefor, the fact that it was promptly filed in the town clerk’s office, and the publicity attending its execution, are all competent and material facts bearing upon the question of intent, and should be received by the court. [Citing Billings v. Russell, 101 N. Y. 226]. Ct. of App. 1886, Nugent v. Jacobs, 103 N. Y. 125.
27. An insolvent, being pressed by bis creditors, executed judgment notes to several of them for debts, some of which were not yet due. Judgments were entered on the notes, and executions levied in a few' hours. At the same time he paid a large cash fee for legal services not yet rendered. The next morning he made a voluntary assignment for th.e benefit of creditors. He falsely pretended when he gave the notes, to have reason to hope for financial assistance to obviate the necessity of an assignment. Held, that the evidence showed that the notes were executed when the debtor had determined to assign, and were illegal preferences, under 1 Starr & C. St., Ill. p. 1307, § 13, and that the levies were, under the Illinois statute, wholly void as to other creditors. Hide & Leather Nat. Bank v. Rehm, 18 Northeastern Rep. 788.
The court say: “ So long as he is clearly shown to have entered upon the disposition of his property for the benefit of his creditors at the time he made the judgment notes, the law will indulge in no' refinements in order to fix the precise point of time at which he reached the determination to make a general assignment. All that was done will rather be viewéd as parts of the .same transaction, so as to make it immaterial whether the determination to make the assignment in fact preceded or followed the execution of the judgment notes. Since the decision of this court in Preston v. Spaulding, 120 Ill. 208; 10 North *337 E. Rep. 903, the law must tie regarded as settled in this State that,, after a debtor has made up his mind to make an assignment of his property for the benefit of his creditors, all conveyances, transfers, and other dispositions of his property or assets, made in view of his intended general assignment, whereby a preference is given, will be held to be within the prohibition of the statute, and void, the same as though incorporated in the deed of assignment itself.”
See also Collins v. Wood (Ala.), 4 Southern Rep. 840; Talbott’s Assignee v. Ewalt (Ky.), 7 Southwest Repr. 631, and note ; Vincent v. McAlpin (Ky.), 9 Id. 165, and note; Loomis v. Stewart (Iowa), 39 Northwest Repr. 660, and note; Romer v. Koch, 2 N. Y. Supp. 540.
28. Recent cases on evidence. In a creditor’s suit to set aside a) conveyance claimed to be fraudulent, where a fair consideration was-paid and the evidence is not preponderating on either side, the circumstances should be heard and considered, and where a simultaneous, conveyance by the grantor is set up as a circumstance indicating fraud,, the adverse party should be allowed to show all the facts attending itsoxecution as bearing on the question of intent. Ct. of App. 1886, Nugent v. Jacobs, 103 N. Y. 125.
29. In a creditor’s action to set aside a conveyance as fraudulent,, declarations of the grantors while they remained in possession of the' property are competent against the defendants who made them (Wright v. Nostrand, 94 N. Y. 31); and also where they were made as part of the fraudulent scheme in which the grantee was implicated to keep the' conveyance secret, and as part of the means for so doing, they are competent against the grantee. Moreover, irrespective of this, it is competent for the plaintiff to prove the continued and unchanged possession of the granted property by the grantors, and to show their declarations while in possession for the purpose of characterizing it. They are in the nature of res gestes declarations, and on the question of fraud clearly competent. [Moore v. Meacham, 10 N. Y. 207; Cuyler v. McCartney, 40 N. Y. 221; Newlin v. Lyon, 49 Id. 661; Tilson v. Terwilliger, 56 Id. 273; Von Sachs v. Kretz, 72 Id. 548; Truax v. Slater, 86 Id. 630; Crary v. Sprague, 12 Wend. 41; Jellenik v. May, 41 Hun, 386.] Ct. of App. 1888, Loos v. Wilkinson, 110 N. Y. 195.
30. On the question of fraud by a grantor and grantee against the .plaintiff and others as creditors of the grantor, the books of the grantor are competent evidence against both defendants to show that there was no charge or indebtedness indicated there such as they rely on as the alleged consideration of the conveyance. It is competent to show that no written obligation for such indebtedness existed; and what appeared or did not appear upon the books is rather in the nature of acts or conduct than the mere declarations of one party. Id.
*338 31. In a creditor’s suit to set aside a preferential assignment, the reception in evidence of judgments recovered against the assignor by the preferred creditors is proper as competent prima facie evidence of their claims. [Citing Candee v. Lord, 2 N. Y. 269 ; Hall v. Stryker, 27 Id. 596; Burgess v. Simonson, 45 Id. 225; Carpenter v. Osborn, 102 Id. 552.] Ct. of App. 1888, Acker v. Leland, 109 N. Y. 5.
It seems, however, that the plaintiffs are not estopped from contesting the genuineness of such judgments or from proving fraud or collusion in their procurement. Ib.
32. A judgment against the assignor, recovered by a precedent creditor after the assignment, is competent evidence against the assignee, -although it may be impeached by showing fraud or collusion in its irecovery. Ludington’s Petition, 5 Abb. N. C. 307, 322.
33. So it was held in White v. Cotzhausen, U. S. S. Ct. Jan. 28, 1889, where a debtor who was an administrator gave illegal preferences -,.to those entitled to distributive shares in the estate, and the preferen- tial instruments were set aside, and the assets held for the benefit of all creditors alike, that the accounting in the probate court, by which -the amount of his indebtedness had been determined, would not be conclusive on the accounting in the creditor’s suit.
34. Intent and notice.] In approving the rule that a sale, in the making of which the object of the debtor is to hinder, delay, or in any way put off his creditors is void, if made to one having knowledge of : such intent; and this knowledge need not bo actual, positive information or notice, but will be inferred from the knowledge by the purchaser of facts and circumstances sufficient to raise such position as ; should put him upon inquiry, the court in Hooser v. Hunt (Wisc. 1886), 26 Northw. Rep. 442, say that if as is claimed the decisions in New York of Stearns v. Gage, 79 N. Y. 102; Parker v. Conner, 93 N. Y. 118; Farley v. Carpenter, 27 Hun, 359; hold a stricter rule as to what would be deemed “actual” or “ previous” notice to the purchaser of the fraudulent intent, they decline to follow them.
35. The rule that the appropriation of firm property to the payment •of individual debts of the partners, or any of them, will avoid an .assignment for creditors that contains such preferences, applies without reference to whether all the partners executing the assignment "knew the fraudulent nature of the preference. Sup'm. Ct. 1888, Fourth Natl. Bank v. Burger, 15 N. Y. State Rep. 101.
36. The fact that a fraudulent transfer is accomplished through the agency of a valid judgment lawfully enforced, does not alter its fraudulent character or enable it to defy justice. Ct. of App. 1888, Decker v. Decker, 108 N. Y. 128.
*339 37. If void in fact is it wholly void ?] In Landeman v. Wilson, (W. Va. 1887], 2 Southeastern Rep. 203, the court stated that it has often been held, and may be considered as weE settled, that when an assignment is fraudulent as to any of its provisions, it is void in toto as against creditors who arc entitled to take advantage of the fraud. [Citing Mackie v. Cairns, 5 Cow. 548; Goodrich v. Downs, 6 Hill, 438; Fiedler v. Day, 2 Sandf. 594; Russell v. Winne, 37 N. Y. 596; s. c., 4 Abb. Pr. (N. S.), 384; Wakeman v. Grover, 4 Paige, 23 ; Darling v. Rogers, 22 Wend. 483, and cases from other States, and say that this last case modified the doctrine of Rogers v. DeForest, 7 Paige, 272.]
38. Although a transfer of property by an insolvent, in trust to secure the payment for such services as may be thereafter rendered, but which the person for whose benefit the transfer is made is under no present legal obligation to render, is void as against the creditors of the assignor, [Barnum v. Hempstead, 7 Paige, 568; Lansing v. Woodworth, 1 Sandf. Ch. 43 ; Elias v. Farley, 2 Abb. Ct. App. Dec. 11; Brainerd v. Dunning, 30 N. Y. 211,] for if such a transfer could be sustained, there would be no limit to the trusts which an insolvent might create for his future benefit, nor any limit to his power to withdraw Ms property from the reach of his creditors ; yet if the security bo not taken with fraudulent intent, it may be sustained as to past services, while held void as to future services. Sup'm. Ct. 1888, Matter of Gordon, 49 Hun, 370.
[It would be wholly void if there were actual intent to defraud.]
39. Powers and duties of assignee, executor, administrator, receiver, etc., as to fraudulent transactions.] The power of an assignee for benefit of creditors, or an executor, administrator, receiver or other trustee, to impeach fraudulent acts of the assignor, testator, etc., conferred by L. 1858, c. 314, p. 506 (same statute, 3 R. S. 7 ed. 2330), does not enable Mm to set aside a chattel mortgage, merely upon the ground that it was not duly filed ; for this omission, although it avoids the mortgage ns to creditors, does not make it, within the meaning of the statute, a fraudulent act. The purpose of the statute is to confer power to treat as void, etc., only acts done and transfers made with fraudulent intent. Sup'm. Ct. Circ. 1887, Crisfield v. Bogardus, 18 Abb. N. C. 334.
But compare Sullivan v. Miller, 40 Hun, 516 ; Sup'm. Ct. 1886, where it was held that a chattel mortgage cannot be avoided at the instance of a judgment creditor of the mortgagor on the ground that it was void because not filed when it was given, where after the execution of such mortgage, and before the recovery of the judgment, the mortgagor made an assignment of Ms property for the benefit of creditors ; in such case the title to the mortgaged property vests in the assignee, *340 and it cannot be made subject to the lien of the judgment. [Citing Spring v. Short, 90 N. Y. 538 ; Southard v. Pinckney, 5 Abb. N. C. 184; s. c. as Southard v. Benner, 72 N. Y. 424, 428.]
40. The act of a judgment debtor in disposing by general assignment of all her title and interest in the property embraced in a chattel mortgage, prior to the recovery of the judgment,—Held, to prevent the judgment creditor from maintaining an action to avoid such chattel mortgage for fraud. [Citing Sullivan v. Miller, 40 Hun, 516 ; Spring v. Short, 90 N. Y. 538.] Sup'm. Ct. 1887, Dorthy v. Servis, 46 Hun, 628.
The fact that when the assignment was made the mortgagee had a. leviable interest in the property, as the debt secured was past due— will not change the legal principle involved, for the reason that even in such case an equity of redemption remains in the mortgagor, lb.
41. In an executor’s action to reach moneys of the testator which defendant claims as a gift, it is competent for the plaintiff, under L. 1858, c. 314, to show, in avoidance of the defense, that such alleged gift was in fraud of his individual rights as a creditor of the testator. [Citing Fort Stanwix Bank v. Leggett, 51 N. Y. 552 ; Ceas v. Bramley, 18 Hun, 187 ; Southard v. Benner, 72 N. Y. 424 ; Levin v. Russell, 42 Id. 251.] Sup’m. Ct. 1886, Jones v. Jones, 41 Hun, 163.
Follett, J., dissented on the ground that there was no evidence that, the testator was insolvent at the time of the gift or at the date of hi¿ death, without proof of which a recovery cannot be had.
42. In a case of a fraudulent conveyance by a decedent during his lifetime, it is the duty of his executors to pursue the real estate so conveyed and claim it for the benefit of persons interested in the estate, so that no one creditor can appropriate it for his sole benefit. [Citing Spring v. Short, 90 N. Y. 538.] Ct. of. App. 1886, Lichtenberg v. Herdtfelder, 103 N. Y. 302.
43. The attempt of a creditor to obtain an illegal preference does not preclude him from claiming on an equal footing with other creditors, when the illegal preference or the instrument securing it is set aside. White v. Cotzhausen, U. S. S. C. T. Jan. 28, 1889.
44. — policy of the late U. S. bankrupt lawf] The effect of the amendment of 1874 of the provision of the bankrupt act [§ 39], in reference to the recovery of money or property, paid, sold, assigned or transferred by a bankrupt contrary to the act,—was to remove the prior absolute prohibition against the proof of a debt, by a creditor who had obtained a preference which had been annulled, and to confine the prohibition to cases of actual fraud, and to limit it even in those cases to a disability to prove more than one half of the debt. *341 Ct. of App. 1887, Jefferson County Natl. Bk. v. Streeter, 106 N. Y. 186.
To constitute actual fraud within the meaning of said provision, actual complicity or a conscious purpose on the part of the creditor to accomplish a known fraud upon the act, must be shown. Ib.
45. Assignee.] Upon a petition for the removal of an assignee it appeared that the petitioners were creditors of the assignors and desired to attack the validity of judgments recovered against the assignors the day before the assignment, upon offers of judgment made by them in actions commenced against them on that day, on which judgments executions had been issued and levied on the same day; and that the assignee’s relations with some of the judgment creditors were intimate, his business being the selling of their goods on commission at their place of business, although he was not their employee. Meld, that he should be removed and a substituted assignee appointed, although no charge was made of improper conduct on his part. N. Y. Com. Pl. 1886, Matter of Kaughran, 13 Daly, 526.
46. And on an accounting by the assignee under the general assignment act of 1877, the court has jurisdiction to inquire as to the assignee’s neglect of duty to impeach a fraudulent conveyance. But for such neglect the measure of liability is the loss actually sustained. Ct. of App. 1888, Matter of Cornell, 110 N. Y. 351, 360.
47. An assignment for benefit of creditors does- not preclude a creditor’s action by individual creditors, unless the assignment be valid; and to impeach it, fraud by the assignor is enough. Ct. of App. 1888, Loos v. Wilkinson, 110 N. Y. 195, 209.
48. Where an insolvent debtor, for the purpose of preferring special creditors, makes special transfers of all his property to secure preferences which would be illegal in an assignment for benefit of creditors, leaving nothing for others, and makes no general assignment, having nothing more to assign, a judgment creditor aggrieved may maintain a creditor’s action to set aside the preferential instruments and judgments, and have the assets administered for the benefit of all the creditors ; and those whom he attempted to be preferred, cannot be excluded because of their attempt to obtain an illegal preference. White v. Cotzhausen, U. S. S. Ct. Jan. 28, 1889.
49. — executors.] The fact that the fraudulent grantee is one of the executors, will not sustain a creditor in suing, as he maybe removed from office as executor, and then the remaining executors may, under L. 1858, c. 314, disaffirm the conveyance and bring an action to set it aside, or the co-executors may begin such action, making the executor grantee a defendant. If all of the executors refuse to commence such *342 action, they may be compelled to do so by an order of the surrogate, who has ample power to that end under Code Civ. Pro. § 2481. [Citing Spring v. Short, 90 N. Y. 538.] Ct. of App. 1886, Lichtenberg v. Herdtfelder, 103 N. Y. 302.
50. Costs.] See the case of Mayer v. Hazard, 49 Hun, 222 ; holding that an assignee for benefit of creditors is not. entitled to a credit ins his account for the expenses of litigation on behalf of the estate, unless it has proved for its benefit. If suit is brought to set aside the assignment as void, and instead of calling the creditors together, as he should, and asking them to indemnify him, he defends the suit, and fails, he cannot .recover his expenses therein from the assigned estate, nor even the expenses of a reference solely to determine the question of his right to do so.
See as to the necessity of express or implied consent of the beneficiary to enable the executor, administrator or other trustee to recover the costs of his litigation, Code Civ. Pro. § 1916.
In Importers’ and Traders’ Bank v. Feuchtwanger (N. Y. Supreme Court, First District, Chambers, February, 1889) it was held in an action wherein it was sought to recover back from preferred creditors, who had been paid their claims under an assignment, the amount so paid them, after the assignment had been set aside as fraudulent., the complaint should be sufficiently definite to show whether the plaintiff relied for his recovery upon the ground (1) that creditors, though their claims were perfectly just, were liable to refund, in case the assignment was afterwards set aside, though such payments were made before the plaintiff made any attack upon the assignment; or (2) that a payment made and received after a creditor has actually begun such suit may be recalled by that particular creditor in case he succeeded in that suit.
The complaint in this action after alleging the incorporation of two-of the plaintiffs; the co-partnerships of the other plaintiffs; and the co-partnerships of the defendants, was as follows :
VI. That on the fifth day of December, 1883, the firm of [plaintiff] duly recovered judgment in this court for the sum of $4,773.81, which judgment was duly entered in the office of the clerk of the city and county of New York, where the said judgment debtors then resided and still reside. [Here follows allegations of recovery of other judgments by other plaintiffs. ]
XV. That each of the foregoing judgments were duly entered in the office of the clerk of the city and county of New York on the day on which they were obtained, and executions on each of the aforesaid judgments were duly issued against the property of the judgment *343 debtors [names] to the sheriff of the city and county of New York, on> the day on which the said judgments were entered, that being the county in which the said judgment debtors then resided and still reside.
XVI. That each of the said executions upon each of the foregoing judgments has been duly returned wholly unsatisfied by the said sheriff, and no part of any of said judgments has been paid, excepting the-sum of $2,931.27, which has been realized on account of one of the-judgments recovered in favor of the firm of [names],
XVII. That the debts upon which each of said judgments were recovered, existed and were contracted prior to the 24th day of September, 1883.
XVIII. That on the 24th day of September, 1883, the defendants-[names], being in possession of a large quantity of assets, consisting of' cash, merchandise and receivables of the value of several thousands of' dollars, and being the owner also of real estate, executed and delivered*' to one [assignee] a general assignment for the alleged benefit of their creditors, which assignment was dated and acknowledged on the 24th day of September, 1883, and recorded in the office of the clerk of the-city and county of New York on said day.
XIX. That the said assignee duly accepted the trust in said assignment and took possession of the property of the said [Heitors ]■ thereunder.
XX. That thereafter, and on the 11th day of December, 1883, the-said [assignee] was by order of the court of common pleas, removed,, and one [ name] was appointed assignee in his place.
XXI. That said assignment contained a large number of preferences directed to be paid by the assignee named in said assignment, out of the assigned property, and among other preferences the assignee in said assignment named, was directed to pay to the defendants, composing the firm of [names], various sums of money, both to them by name-as well as to them as owners of the notes made by the said judgment debtors, the 'assignors.
XXII. That under and by virtue of the said general assignment, and not otherwise, the defendants composing, the firm of [name] received from the assignee by way of preferences therein directed to be paid—the following sums: On October 10, the sum of $5,000.

[Here follows the statement of the various sums paid, as preferences, without specifying the year of the payment.]

XXIII. That such payments were made to the parties directed to be paid in said assignment, and are preferences numbered from the fifth to the twenty-fifth inclusive, and such moneys were received by defendants under and in pursuance of such preferences and not otherwise., to the knowledge of said defendants herein.
*344 XXIV. These plaintiffs further show that after the return of their executions unsatisfied, as aforesaid, an action was commenced by them in this court against the said judgment debtors and against [assignee] to set aside the general assignment upon the ground that the said .¡assignment was made with intent to hinder, delay, cheat and defraud the creditors of the said [debtors], and that in said action a decree was duly entered and made in the month of June, 1885, setting aside the ¡general assignment as having been made with intent to delay, cheat and defraud the creditors of the said [debtors] and directing the payment of the various judgments of plaintiffs to be paid out of the funds in the hands of the assignee, and plaintiffs beg leave to refer and make part of this complaint the said general assignment, and said decree setting aside the said general assignment, the same as though .the said documents were fully and at large set out.
XXV. These plaintiffs further allege that prior to the commencement of the action in which these plaintiffs were plaintiffs to set aside the said general assignment, other actions have been commenced by other creditors, of the said [debtors] to set aside the, same instrument for fraud, and upon the ground that the same was made with intent to hinder, delay and defraud the creditors, in which actions decrees were also entered setting aside the said general assignment.
Plaintiffs allege on information and belief that the defendants, composing the firm of [name], at the time they received the said moneys herein referred to, by way of transfers from the assignee under the said general assignment, knew of the pendency of the action of plaintiffs as well as the other suits then existing, and also knew of the fraudulent character of the said general assignment, as aforesaid, and the said defendants retain and refuse to pay over any part of the moneys received by them under said assignment.
Wherefore, plaintiffs demand judgment against the said defendants [name] that they may be compelled to pay over the sum of to a receiver to be appointed in this action, being all of the moneys received by them under the general assignment, together with interest thereon from the date of such receipt.
That a receiver of such money be appointed by the court, and that •said receiver be directed to pay out of such money the amount of plaintiffs judgment in this action, together with interest from the date •of the recovery thereof.
Upon this complaint the defendant moved to make certain allegations therein more definite and certain and to strike out others as irrelevant and redundant.
The notice of motion [omitting the formal parts] was as follows:
*345 First That the allegations in paragraph XVI. fol. 10, be made .more definite and certain by stating the dates when the various executions therein mentioned were returned wholly unsatisfied.
Second. That the allegations in paragraph XVI. fol. 10, be made more definite and certain by stating in what manner the sum of two thousand nine hundred and thirty-one dollars and twenty-seven cents has been realized on account of one of the judgments recovered in favor >of the firm of \name\.
Third. That the allegations in paragraph XXII. fols. 14 and 18, be made more definite and certain by stating the year or years in which the alleged payments therein named were made.
Fourth. That the allegations in paragraph XXIV. fol. 16, be made more definite and certain by stating the time when plaintiffs began the action therein mentioned to set aside the said general assignment.
Fifth. That the allegations in paragraph XXV. fol. 18, setting forth that actions were begun by creditors other'than these plaintiffs, to set aside the said general assignment, be stricken out as irrelevant and redundant ; or in case such relief be denied, that the said allegations may be made more definite and certain by stating what actions are therein referred to, and the dates at which the same were begun.
Sixth. That the allegations in paragraph XXV. fol. 19, setting forth that the defendants, composing the firm of [mame], at the time of the alleged payments to them, knew of the pendency of actions, brought by creditors other than these plaintiffs, to set aside the said general assignment, be stricken out as irrelevant and redundant; or in case such relief be denied, that the said allegations may be made more definite and certain by stating what actions were known by said defendants to be pending at said time.
Seventh. That the allegations in paragraph XXV. fol. 19, be made more definite and certain by stating what fact or facts showing the said general assignment to be fraudulent were known to the defendants composing the firm of \namé\ at the time of the alleged payments to them.
Martin & Smith, for the defendants, and the motion.
Blumenstiel & Kirsch, for the plaintiffs, opposed.
O’Brien, J.—Upon an examination of the questions presented upon this motion, I am inclined to adopt the suggestion made upon the argument that that portion of the motion which seeks to strike out certain portions of the complaint as irrelevant and redundant should be denied, and that portion of the motion which seeks to make the allegations in the complaint more definite and certain should be granted. The reason for this latter view is apparent when we consider that, as *346 the complaint is now drawn, it will be difficult to determine upon which one of two theories the complainant relies. This action, like-many similar to it, recently brought, seeks to recover from preferred creditors, who have been paid their claims under an assignment, the-amount so paid them after the assignment itself has been set aside as fraudulent and void. One ground relied upon is that creditors, though their claims are perfectly just, are liable to refund, in case the-assignment is afterwards set aside, though such payments were made before plaintiff made any attack upon the assignment. A second and different theory is, that a payment made and received, after a creditor has actually begun suit, may be recalled by that particular creditor in case he succeeds in the suit. The complaint, therefore, should be sufficiently definite, so that from the reading thereof it can be made manifest upon which theory the plaintiff relies. The allegation that the defendant knew the assignment to have been fraudulent is too indefinite. Without, therefore, commenting on each allegation in the complaint to which objection has been made, it seems proper, in view of the importance and novelty of the legal questions here involved, that all the facts showing the creditor’s right to recover should be definitely alleged. The motion, therefore, to the extent indicated, is granted.

 The allegations of the complaint, after stating the partnerships of" the plaintiffs, and of the debtor defendants, respectively, and plaintiff’s sale, etc., of goods to the debtor defendants, etc., which remained unpaid-for; were as follows:
3rd. That on December 10,1888, said defendants [names of debtors],. composing said firm, duly executed, acknowledged and delivered to the-defendant B. [assignee], a general assignment of all their property for the benefit of creditors, which assignment was thereupon accepted by said B. and was recorded in the Saratoga county clerk’s office on the said December 10, 1888, at 3:4.5 in the afternoon of that day.
4th. That a copy of said assignment is hereto annexed and marked “ A,” and make a part of this complaint.
5th. That on said December 10, 1888, and prior to the execution and delivery of said assignment, as aforesaid, while the defendants-[names of debtors] said firm, were insolvent and nnable to pay their debts and liabilities in full, they, said [names of debtors], said firm, confessed judgments in this court as follows, to wit:
A judgment in favor of the defendant the First National Bank of Saratoga Springs for the sum of $253.29.
[Other judgments were stated in the same manner], each and all of which confessions of judgments were filed in the office of the clerk of Saratoga county and judgments entered thereon accordingly, at fifteen minutes past one o’clock in the afternoon of that day, and that immediately after the entry of the said judgments as aforesaid, executions thereon were respectively issued to the sheriff of the county of Sarato *322 ga against the firm ancl individual property of said [names of debtors], for the full amount of said judgments, respectively, and that immediately prior to the execution and delivery of the said assignment the said sheriff levied under the said executions, upon the entire stock and property of the defendants [names of debtors], at their said stores, Nos. 416 and 418 Broadway, in the village of Saratoga Springs, N. Y.
6th. That under such levies said sheriff took possession of the said property immediately before the delivery of the said assignment, and now has possession of the same under said levies and has advertised the same for sale thereunder on Décember 27, 1888.
7th. That copies of the said confessions of judgment, and on the judgments entered thereon as aforesaid, and notice of sale under said executions are hereto annexed and marked 1, [etc.] respectively, and ;made part of this complaint.
8th. That on said December 10, 1888, and prior to the execution .•and delivery of said assignment as aforesaid, while the defendants .[names of debtors], said firm, were insolvent and unable to pay their •debts and liabilities in full, they, said [names of debtors], said firm, -executed and delivered certain chattel mortgages covering all the .-property of said [names of debtors], in their store, Nos. 416 and 418 .Broadway, in the village of Saratoga Springs, Saratoga county, N. Y., as follows, to wit:
A chattel mortgage in favor of the defendant [name], for the sum of ;$300 and interest thereon from January 2, 1888.
[Others were stated in the same manner], each and all of which (chattel mortgages were filed in the office of the clerk of the Town of -Saratoga Springs at five minutes past one o’clock in the afternoon of •.that day, and that immediately after the execution, delivery and filing •of said chattel mortgages as aforesaid, and immediately prior to the -execution and delivery of the said assignment, the mortgagees under said mortgages seized, and took into their possession the entire stock ¡and property of the defendants [names of debtors], and of said firm of [name], at their said store, Nos. 416-418 Broadway, by them at the time .of the confession of said judgments, the execution and delivery of said •mortgages, and the making of said assignment, except outstanding .-accounts of the value of three thousand ($3,000) dollars or thereabouts; that the entire liabilities at that time of said assignors were in excess -of §40,000, and the entire assets will and would not exceed $20,000 in -«value.
*323 11th. That the said assignment and all of the said judgments and mortgages was drawn up at one time by the same attorneys, who acted as counsel for all of the parties; that the assignee was then and still is ■cashier of the defendant, the First National Bank, in favor of which, seven of said judgments were confessed ; that the president of said bank is the father of the assignee, and is individually liable on some ■of the papers secured by chattel mortgages and confessed judgments.
12th. That the said judgments were confessed, and the said chattel mortgages were given by the said defendants at a time when they were hopelessly insolvent, and were contemplating the execution of said general assignment, and were made and given as a part of the disposition of their assets in view of such insolvency, and that the said judgments were ■Confessed and the chattel mortgages given with the intention and design of thereby preferring to the defendants, in whose favor said judgments were confessed and chattel mortgages were given out of the .assets of the firm of [name] to the extent of. more than one-third of such assets, and with the purpose and design of evading the laws of this State in reference to insolvent assignments, and that said judgment creditors and mortgagees have been thereby preferred to the ■extent of more than one-third of the assets of said assignors, and that the said confessed judgments and chattel mortgages as being part of one entire scheme for the disposition of the total assets of the said firm of [name], in view of insolvency and the execution of the said •assignment, were a - fraud upon the rights of the general creditors of said firm, and that said judgments and chattel mortgages were either wholly ineffectual and invalid, or were at least operative only to the •extent of one-third of the actual assets of the said assignors, after deducting wages and salaries due by them, and the costs and expenses •of executing such assignment, and that the property levied upon and threatened to be sold and the property conveyed by said chattel mortgage under the executions issued on said judgments constitute a part ■of the trust fund created by the said general assignment, and should be brought into this court for administration under said assignment, .and for distribution by the said assignee in accordance with the requirements of law.
18th. That heretofore and before the commencement of this action, these plaintiffs demanded of the defendant [name], as .assignee of [name], that he bring such action or actions as were proper to prevent the said judgment creditors and mortgagees *324 from obtaining any priority other than such as they might be found entitled to at law', and to have adjudged and declared that said confessed judgments and chattel mortgages w'ere part' and parcel of the said assignment, and were made in view of the execution thereof, and in contemplation of the insolvency of the assignors, and part of the-scheme of the disposition of their total assets in view of insolvency, and that the proceeds of the goods so held under executions issued upon said judgments and covered by the chattel mortgages should be-brought in and distributed as part of the trust fund created by said general assignment for the benefit of all the creditors of the said firm of [name], and that the said judgment creditors should receive such portion of such trust,fund as it should be adjudged upon a final' accounting and distribution they should be entitled to receive. That, the said defendant [assignee] has neglected and refused to restrain such sale or to bring the action demanded as above, and these plaintiffs-therefore bring this action on behalf of themselves and all other-creditors of the firm of [name] who may come in and make themselves-parties to the same.
14th. These plaintiffs further allege that there are a large number of firm creditors of the said assignors [name], who, as well as these-plaintiffs, are beneficiaries in the trust created by the said assignment, and who have a common interest with the plaintiffs therein, and who, in common with the plaintiffs, would be greatly damaged by the-sale and disposition of the property of the assignors under said judgments and chattel mortgages, if the same is permitted to be made.
15th. The plaintiffs further show that if the said goods are to be-sold under said judgments or chattel mortgages, or either of them, and the proceeds thereof distributed to said judgment creditors and mortgagees, the general creditors of the firm of [name], the said assignors, will be put to great and irreparable loss by reason of the-distribution of the same, and will be compelled to bring a multiplicity of actions to secure their rights; and that the plaintiffs and other general creditors of the said assignors are without redress in the-premises, except such as they have from a court of equity.
No personal claim is made in this action against any of the defendants.
Wherefore, plaintiffs demand judgment:
I. That the said judgments, chattel mortgages, executions and *325 levies be deemed, to have been executed, made and performed in contemplation of insolvency, and as part and parcel of the general assignment filed by the said assignors, and-with the intent to avoid the provisions of the statute restricting preferences under an assignment to one-third of the assets of the assignors, and as a fraud upon and evasion and violation of said statute and upon the rights of the general creditors under said assignment, and that the said judgments and mortgages, and each of them, be declared fraudulent, invalid and void as to the assignee under said assignment and the general creditors of the assignors, including these plaintiffs.
ti. That the property seized, taken and held under and by virtue of said judgments and mortgages be declared to be a portion of the trust fund created by the general assignment and to be distributed thereunder.
III. That an injunctionissue restraining the defendants, their agents, attorneys and deputies from selling, disposing of, taking or interfering in any manner, except to preserve che same, with the goods seized by them under executions or chattel mortgages; and that all of said property be directed to be turned over to such person as may administer the said -trust estate under said assignment.
IV. That, if the court shall deem proper, the defendant, [assignee] be removed from his position as assignee under said assignment, and a receiver be appointed herein to receive the goods and property covered by said mortgages and executions, and all other property passing under said assignment, and to administer the same in the place and.stead of said assignee; and that the plaintiffs have such other and further judgment or relief as to the court may seem just, with the costs of this action.